UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | File No. |
| ) | |
| CITY OF DALTON, ETHAN PUGH, ) | **JURY TRIAL DEMANDED** |
| individually, and CLIFF CASON, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES

Plaintiff Jane Doe (hereinafter "Plaintiff" or "Ms. Doe") submits the following Complaint for Damages against Defendant City of Dalton ("Dalton"), former Officer Ethan Pugh ("Defendant Pugh"), and Chief of Police Cliff Cason ("Defendant Cason" or "Chief Cason") (collectively, "Defendants"), showing the Court as follows:

### INTRODUCTION

1. From the time she was a child, Ms. Doe yearned to serve her community through a career in law enforcement. She would be the fourth generation of her family to do so, and the first woman. Her dreams were dashed in the summer of 2019 when at the age of 21 she became an intern for the Dalton Police Department

("DPD"). During her internship, Defendant Pugh subjected Ms. Doe to severe sexual harassment, as well as sexual assault. Defendant Pugh, a 28-year-old married man, was a known sexual harasser, yet the DPD allowed him to conduct a "ride-along" with Ms. Doe, providing him with the opportunity to repeatedly sexually assault her.

2.      Ms. Doe asserts claims for sex discrimination in violation of the Equal Protection Clause of the Constitution of the United States, asserted via 42 U.S.C. § 1983, as well as multiple Georgia tort claims, including assault, battery, sexual battery, intentional infliction of emotional distress, and invasion of privacy. Ms. Doe seeks compensatory damages, punitive damages, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## JURISDICTION AND VENUE

3.      Ms. Doe's constitutional claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

4.      The Court has supplemental jurisdiction over Ms. Doe's state law claims under 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Rome Division of the United States District Court for the Northern District of Georgia.

## PARTIES

6. Ms. Doe is a female who resides in Murray County, Georgia, which is in the Rome Division of the Northern District of Georgia.

7. Defendant Dalton is a municipal corporation in the State of Georgia and is subject to the jurisdiction and venue of this Court. Dalton may be served with a copy of this Complaint and process by serving the Mayor, David Pennington, at 300 W. Waugh St., Dalton, GA 30720.

8. At all times relevant to this action, Defendant Dalton was a state actor within the meaning of the Constitution.

9. Defendant Ethan Pugh was, at all relevant times, a police officer employed by the DPD and Defendant Dalton. He is sued in his individual capacity. Upon information and belief, Defendant Pugh resides in the jurisdiction of the Rome Division of the Northern District of Georgia. Defendant Pugh is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

10. Defendant Cliff Cason is Chief of Police for the DPD, as he was at all

relevant times. He is sued in his individual capacity. Defendant Cason resides in the jurisdiction of the Rome Division of the Northern District of Georgia. Defendant Cason is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

11. At all times relevant to this action, Defendants Pugh and Cason were acting under color of state law.

## FACTUAL BACKGROUND

12. At all times relevant to this action, Defendant Pugh was an officer with the DPD, until he voluntarily resigned on July 10, 2020, the day that his sexual harassment and assault of Ms. Doe came to light in the DPD.

13. Defendant Pugh was a repeat offender of the DPD's policy on "harassment and discrimination in the workplace," G096-3.7, which states in part:

> Sexual harassment is defined as unwelcome words or behaviors such as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when: such conduct has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile, or offensive working environment.

14. On August 20, 2018, less than one year before he sexually harassed and

4

assaulted Ms. Doe while working for DPD, Defendant Pugh admitted to violating the DPD's policies on "harassment and discrimination in the workplace" and "rules on conduct," and he signed a "waiver of pre-disciplinary hearing" in which he admitted the following:

> I did not treat a group of females with respect and was not courteous to them. My behavior of asking for unwelcomed requests and comments may have lead [sic] this group of females to feel intimidated or uncomfortable in the workplace.

15. In recommending that Defendant Pugh face discipline the year before he sexually harassed and assaulted Ms. Doe, DPD Captain Chris Cooke officially recommended to Defendant Cason, "I feel a case can be made to terminate Officer Pugh from the department for this action to ensure the integrity of the culture of the department . . . ."

16. Despite Captain Cooke's recommendation to consider terminating Pugh for violating DPD's harassment and discrimination policy, Defendant Cason decided not to terminate Defendant Pugh.

17. Instead, Defendant Pugh voluntarily accepted discipline, including suspension without pay, a formal written reprimand, a performance contract, and remedial training.

18. The conduct for which Defendant Pugh was disciplined in 2018 for harassment and discrimination in the workplace included sending and/or making

5

inappropriate text messages, phone calls, comments, and/or requests for photographs to female officers and a female judge. As to one of the female officers, who was married, Defendant Pugh requested a swimsuit photo, commented about her body, and propositioned her for sexual conduct, which the female officer declined.

19. Less than one year later, Ms. Doe got her first job in law enforcement, serving as summer intern for the DPD from June 3, 2019, to July 11, 2019.

20. At that time, Ms. Doe was just 21 years old.

21. In this role, Ms. Doe's direct supervisor was Alan Woods.

22. Ms. Doe's duties as a summer intern included attending a weekly ride-along with a patrol officer, during which she would spend an entire day in a patrol car with a DPD officer while said officer performed his or her job duties.

**Sexual Harassment, Assault, and Battery by Defendant Pugh**

23. On July 8, 2019, Ms. Doe undertook her weekly ride along, and Defendant Pugh was the officer to whom she was assigned.

24. Ms. Doe was assigned to Defendant Pugh, despite Defendant Pugh's known history of sexually harassing DPD employees, including the incidents for which Defendant Pugh was voluntarily disciplined.

25. As of July 8, 2019, Ms. Doe had never had any sexual contact of any kind with Defendant Pugh, nor had she ever discussed having sexual contact with

6

him.

26. On that day, Defendant Pugh had numerous weapons on him, while Ms. Doe was unarmed, and Defendant Pugh was Ms. Doe's superior, whose commands she had to obey.

27. While Defendant Pugh and Ms. Doe were walking to his patrol car, Defendant Pugh purposefully and intentionally grabbed Ms. Doe's buttocks, and did so without warning or consent. This action by Defendant Pugh was unwanted, uninvited; Ms. Pugh felt it was offensive and objectionable; and it intruded upon her physical and psychological privacy and integrity.

28. During the morning portion of their ride along, Defendant Pugh drove them to a secluded and empty lot where he parked the car in which he and Ms. Doe were the only occupants, both seated in the front, and locked the doors of the patrol car.

29. Without warning or consent, Defendant Pugh leaned over and began forcefully kissing Ms. Doe on the mouth and with his tongue. This action by Defendant Pugh was unwanted, uninvited; Ms. Pugh felt it was offensive and objectionable; and it intruded upon her physical and psychological privacy and integrity.

30. Ms. Doe receded from Defendant Pugh's kiss until she was up against

the passenger door, and Ms. Doe did not kiss Defendant Pugh back.

31. Without warning or consent, Defendant Pugh then stuck his hand down Ms. Doe's pants, including inside her underwear, grabbed her buttocks and digitally penetrated her vagina, causing pain. This action by Defendant Pugh was unwanted, uninvited, and unwarranted.

32. After several minutes, Ms. Doe told Defendant Pugh to stop, and he did.

33. In the afternoon, as the ride along continued, Defendant Pugh drove Ms. Doe to a secluded and empty lot in an undeveloped area, where he parked his patrol car and locked the doors.

34. Defendant Pugh and Ms. Doe were still alone in front seat.

35. Defendant Pugh then unzipped his pants and commanded Ms. Doe in a frightening tone of voice: "You're going to give me a hand job." This action by Defendant Pugh was unwanted, uninvited; Ms. Pugh felt it was offensive and objectionable; and it intruded upon her physical and psychological privacy and integrity.

36. Ms. Doe feared for her safety, including because Defendant Pugh drove them to a secluded area, he was armed while she was not, the doors were locked, and he was much larger than her.

37. Ms. Doe complied with Defendant Pugh's order because she feared for her safety, including fearing that Defendant Pugh would rape her if she did not comply.

38. At no point did Ms. Doe initiate physical contact with Defendant Pugh or verbally communicate that she wished to have physical contact with him.

39. After the sexual assaults and harassment, as Defendant Pugh drove Ms. Doe back to the precinct, he threatened Ms. Doe, directing her not tell anyone what happened because he would get fired, his wife would come after Ms. Doe, and no one would believe her if she did report him.

40. Shortly after Ms. Doe's internship ended, Defendant Pugh repeatedly sent her sexually explicit content, including unsolicited photos of his penis, videos of him masturbating, and memes. This action by Defendant Pugh was unwanted, uninvited; Ms. Pugh felt it was offensive and objectionable; and it intruded upon her psychological privacy and integrity.

41. Upon information and belief, Defendant Pugh sent the above content while on-duty with the DPD.

42. Ms. Doe asked him to stop, but he continued sending her inappropriate messages and pictures. Ms. Doe

43. Shortly after Ms. Doe's internship ended, Defendant Pugh called Ms.

9

Doe and attempted to video chat with her. This action by Defendant Pugh was unwanted, uninvited; Ms. Pugh felt it was offensive and objectionable; and it intruded upon her psychological privacy and integrity. Ms. Doe did not accept his calls or chats.

44. Upon information and belief, Defendant Pugh was on duty when he called and attempted to video chat with Ms. Doe.

### Ms. Doe's Reporting of the Sexual Assault and Harassment

45. In the year after being sexually assaulted and harassed, Ms. Doe befriended Natima Walker, the executive director of a sexual assault center, whom Ms. Doe came to trust.

46. As the one-year anniversary of the sexual assault approached, Ms. Doe disclosed to Ms. Walker that Defendant Pugh had sexually assaulted and harassed her.

47. With Ms. Walker's support, on July 10, 2020, Ms. Doe was able to come forward and report that Defendant Pugh had sexually assaulted and harassed her.

48. That same day, July 10, 2020, Defendant Pugh resigned from the DPD.

49. Defendant Pugh was then investigated by the GBI, and the Catoosa County district attorney's office will be presenting the matter to the grand jury.

## COUNT I
### SEX DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE CONSTITUTION
**(Asserted via 42 U.S.C. § 1983)**
*Against all Defendants*

50. Paragraphs 1 through 48 are incorporated herein by reference.

51. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Ms. Doe to equal protection under the laws, including equal protection with respect to gender.

52. The Equal Protection Clause of the Fourteenth Amendment provides a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.

53. Defendant Pugh violated Ms. Doe's rights to equal protection by, *inter alia*, subjecting her to a sexually harassing and hostile working environment because of her sex.

54. Defendants Dalton and Cason violated Ms. Doe's rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful sexually harassing conduct even though they knew of, and were on notice of, Defendant Pugh's prior sexual harassment of others.

55. Defendants' conduct constitutes unlawful sexual harassment and discrimination, based upon gender, in violation of the Equal Protection Clause.

56. Defendants undertook all of the unlawful conduct giving rise to Ms. Doe's claims while acting under color of State, local law, regulations, customs or usages.

57. Defendant Pugh, individually, violated clearly established law prohibiting sexually harassing a subordinate in the workplace.

58. Defendant Pugh undertook his unlawful conduct intentionally, recklessly, and maliciously with respect to Ms. Doe and her federally protected rights, entitling her to recover compensatory and punitive damages against him, individually.

59. In failing to terminate Defendant Pugh in 2018, and pairing Ms. Doe with Defendant Pugh for ride along during her internship despite knowing of Defendant Pugh's history of harassing other women while acting as an officer of the DPD, Defendants Dalton and Cason exhibited deliberate indifference to Ms. Doe's equal protection rights.

60. Defendants Dalton and Cason's actions were reckless and were taken in willful disregard of the probable consequences of their actions, entitling Ms. Doe to recover punitive damages against Defendant Cason.

61. As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Ms. Doe has suffered damages, including emotional

distress, fear, humiliation, and other indignities.

## COUNT II
## ASSAULT
### *Against Defendant Pugh*

62. Paragraphs 1 through 48 are incorporated herein by reference.

63. On July 8, 2019, Defendant Pugh instructed Ms. Doe to perform masturbation on him, and he did so while they were alone in a secluded location, while he was armed and she was not, and there existed a power differential between them, both physical and professional.

64. Defendant Pugh's conduct toward Ms. Doe led her to reasonably and imminently anticipate that he would engage in the unwanted touching of her, including rape and bodily injury, constituting an assault.

65. Ms. Doe performed no actions to invite Defendant Pugh to solicit this sexual contact, and Defendant Pugh's demand that she perform masturbation on him constituted an assault.

66. As a result of Defendants Pugh's unlawful actions, Ms. Doe has suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT III
## BATTERY AND SEXUAL BATTERY
### *Against Defendant Pugh*

67. Paragraphs 1 through 48 are incorporated herein by reference.

68. On July 8, 2019, Defendant Pugh repeatedly and knowingly engaged in the unlawful, humiliating, unwanted, lustful, unauthorized, and insulting touching of Ms. Doe, including through grabbing her butt, penetrating her vagina, kissing her, and commanding her to give him a hand job.

69. Ms. Doe did not consent to Defendant Pugh touching her.

70. As a result of Defendants Pugh's unlawful actions, Ms. Doe has suffered physical pain and injury from being penetrated, and she suffered emotional distress, fear, humiliation, and other indignities.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Against Defendant Pugh and Defendant Dalton*

71. Paragraphs 1 through 48 are incorporated herein by reference.

72. Defendant Pugh intentionally, maliciously, wantonly and in gross and reckless disregard for Ms. Doe's health and safety, engaged in extreme and outrageous conduct when he subjected Ms. Doe to embarrassment, humiliation, degradation, and ridicule by sexually harassing and assaulting her, thereby causing Ms. Doe to suffer extreme emotional distress, mental anguish, humiliation, and other indignities.

73. Defendant Pugh's conduct toward Ms. Doe was objectively malicious, wanton, and wholly incompatible with the standards of society, thereby constituting intentional infliction of emotional distress.

74. Based on its actual knowledge of Defendant Pugh's history and propensity for sexual harassment, Defendant Dalton condoned, adopted, and ratified Defendant Pugh's conduct, making it liable for his intentional infliction of emotional distress upon Ms. Doe.

75. As a result of Defendant Pugh's and Defendant Dalton's unlawful actions, Ms. Doe has suffered emotional distress, fear, humiliation, and other indignities.

## COUNT V
## INVASION OF PRIVACY
*Against Defendant Pugh and Defendant Dalton*

76. Paragraphs 1 through 48 are incorporated herein by reference.

77. Plaintiffs incorporate by reference the foregoing paragraphs 1 through 157 of the Complaint as if fully stated herein.

78. The tort of invasion of privacy is actionable under Georgia law upon proof that an individual unreasonably intruded into another person's private concerns in a manner that "would be offensive or objectionable to a reasonable person." *Troncalli v. Jones*, 237 Ga. App. 10, 14 (1999).

79. Defendants Pugh's actions described above involving unwanted, uninvited, and unwarranted sexual and inappropriate communications and touching of Plaintiff constituted the tort of invasion of privacy under Georgia law.

80. At all relevant times, Defendant Pugh was acting in the course and scope of his employment with Defendant Dalton, making Defendant Dalton vicariously liable for the actions of Defendant Pugh under a theory of *respondeat superior*. (shouldn't we say the DPD and the supervisor as well?)

81. Based on Defendant Dalton's actual and constructive knowledge of Defendants Pugh's misconduct, and his history and propensity for the same, Defendants Dalton, adopted, and ratified Defendant Pugh's conduct, making Defendant Dalton also liable for his actions.

82. As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

**COUNT VI**
**PUNITIVE DAMAGES UNDER O.C.G.A. § 51-12-5.1**
***Against Defendant Pugh***

83. Paragraphs 1 through 48, and 62 through 82, are incorporated herein by reference.

84. All of Defendant Pugh's unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Ms. Doe, or was done with reckless disregard for Ms. Doe and her rights.

85. Accordingly, Defendant Pugh is liable to Ms. Doe for punitive damages.

## COUNT VII
### ATTORNEYS' FEES AND COSTS UNDER O.C.G.A. § 13-6-11
*Against Defendant Pugh*

86. Paragraphs 1 through 48, and 64 through 82, are incorporated herein by reference.

87. By his actions described above, Defendant Pugh acted with intentional misconduct and malice and that species of bad faith which gives rise to a claim for attorneys fees under Georgia law. Further, by his stubborn litigiousness prior to and during this lawsuit, Defendant Pugh acted in bad faith, was stubbornly litigious, and put Ms. Doe to unnecessary trouble and expense.

88. Thus, under O.C.G.A. § 13-6-11, Ms. Doe is entitled to recover her attorneys' fees and expenses incurred in prosecuting this action.

## COUNT VIII
## PUNITIVE DAMAGES UNDER O.C.G.A. § 51-12-5.1
### *Against Defendant Dalton*

89. Paragraphs 1 through 48, and 76 through 82, are incorporated herein by reference.

90. All of Defendant Dalton's unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Ms. Doe, or was done with reckless disregard for Ms. Doe and her rights.

91. Accordingly, Defendant Dalton is liable to Ms. Doe for punitive damages.

## COUNT IX
## ATTORNEYS' FEES AND COSTS UNDER O.C.G.A. § 13-6-11
### *Against Defendant Dalton*

92. Paragraphs 1 through 48, and 76 through 82, are incorporated herein by reference.

93. By its actions described above, and by their stubborn litigiousness prior to and during this lawsuit, Defendant Dalton acted in bad faith, was stubbornly litigious, and put Ms. Doe to unnecessary trouble and expense.

94. Thus, under O.C.G.A. § 13-6-11, Ms. Doe is entitled to recover her attorneys' fees and expenses incurred in prosecuting this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.   That this Court take jurisdiction of this matter;

B.   That process be served;

C.   That the Court award compensatory damages in an amount to be determined by the trier of fact;

D.   That the Court award punitive damages against Defendants Pugh and Cason in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendants Pugh and Cason for their conduct toward Plaintiff and deter them from similar conduct in the future;

E.   That the Court award Plaintiff her costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and other applicable laws;

F.   That the Court grant Plaintiff the right to have a trial by jury on all issues triable to a jury; and

G.   That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 7th day of July, 2021.

**BUCKLEY BEAL, LLP**

By:   */s/ Rachel Berlin Benjamin*
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Rachel Berlin Benjamin
Georgia Bar No. 707419
rberlin@buckleybeal.com
600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

WADE, GRUNBERG & WILSON LLC
Jonathan D. Grunberg
Georgia Bar No. 869318
jgrunberg@wgwlawfirm.com
1629 Monroe Dr.
Atlanta, GA 30324
Telephone: (404) 600-1153
Facsimile: (404) 969-4333

**LAW OFFICES OF MCCRACKEN POSTON**
McCracken Poston
Georgia Bar No.  585606
postonlaw@gmail.com
7713 Nashville Street
Ringgold, Georgia 30736
Telephone: (423) 265-5888
Facsimile: (706) 965-5413

*Counsel for Plaintiff*